**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LES FIELDS/C.C.H.I. INSURANCE SERVICES,<br><br>                  Plaintiff,<br><br>          v.<br><br>STUART M HINES, et al.,<br><br>                  Defendants. | Case No.  15-cv-03728-MEJ<br><br>**ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE, SUMMARY JUDGMENT**<br><br>Dkt. Nos. 54, 57, 59 |

**INTRODUCTION**

Plaintiff Les Fields ("Fields")/C.C.H.I. Insurance Services ("C.C.H.I.") (collectively "Plaintiff") sued his former employees and the new company they formed, accusing them of conspiring to form a competing company and steal C.C.H.I.'s clients.  Pending before the Court are three dispositive motions: (1) Defendant Stuart M. Hines' ("Hines") Motion for Summary Judgment, Dkt. No. 54 ("Hines Mot."); (2) a Motion for Summary Judgment filed by the InterRemedy Defendants,[1] Dkt. No. 57 ("IR Mot."); and (3) Plaintiff's Motion for Judgment on the Pleadings or in the alternative for Summary Judgment,[2] Dkt. No. 59 ("Pl.'s Mot.").  The Court previously vacated the hearing on the Motions (Dkt. Nos. 69, 74) and finds them suitable for disposition without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).

The Court is taking the unusual step of marking this Order "Not for Publication" as it is strictly limited to the parties' particular arguments and the evidence explicitly identified by them.

Having considered the parties' positions, relevant legal authority, and the record in this

---

[1] The "InterRemedy Defendants" are InterRemedy Insurance Services LLC ("InterRemedy"), Debbie Canadas, Joyce Sykes McGuire, and Kim Willoughby.

[2] Plaintiff's Motion is directly solely to Defendant Risk Management and Reinsurance Services LLC, which the parties refer to as "RISK" or "RMRS."

United States District Court
Northern District of California

case, the Court, for the reasons stated below, (1) **GRANTS IN PART** and **DENIES IN PART** Defendant Hines' Motion; (2) **GRANTS IN PART** and **DENIES IN PART** the InterRemedy Defendants' Motion; and (3) **DENIES** Plaintiff's Motion for Judgment on the Pleadings, and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must go beyond the pleadings and set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for

United States District Court
Northern District of California

1    evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing

2    papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified*

3    *Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this

4    showing, the moving party is entitled to a judgment.  *See Celotex*, 477 U.S. at 323.

5           Additionally, at the summary judgment stage, parties must set out facts they will be able to

6    prove at trial.  At this stage, courts "do not focus on the admissibility of the evidence's form . . . .

7    [but] instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036

8    (9th Cir. 2003) (citation omitted).  "While the evidence presented at the summary judgment stage

9    does not yet need to be in a form that would be admissible at trial, the proponent must set out facts

10   that it will be able to prove through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d

11   966, 973 (9th Cir. 2010) (citations omitted).  Accordingly, "[t]o survive summary judgment, a

12   party does not necessarily have to produce evidence in a form that would be admissible at trial, as

13   long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."  *Block v. City*

14   *of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not "produce

15   evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see*

16   *also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must

17   be made on personal knowledge, set out facts that would be admissible in evidence, and show that

18   the affiant or declarant is competent to testify on the matters stated.").

19                                    **PRELIMINARY ISSUES**

20   **A.    Plaintiff's Objections and Request for Judicial Notice**

21           Plaintiff filed evidentiary objections to both sets of Defendants' Motions, but did so

22   outside of his Opposition briefs.  *See* Pl.'s Hines Objs., Dkt. No. 77-8; Pl.'s IR Objs., Dkt. No. 80-

23   2.[3]  These separate filings violate Civil Local Rule 7-3(a), which requires "[a]ny evidentiary and

24   procedural objections to the motion be contained within the brief or memorandum."  Any

25   objections not contained in Plaintiff's Oppositions or specifically raised in his Controverted

26   Statement of Facts (*see* Pl.'s Hines Stmt. of Controverted Facts, Dkt. No. 77-7; Pl.'s IR Stmt. of

27

28   _____
     [3] In citing documents in this Order, the Court refers to the Motion with which they are associated:
     "Hines" or the InterRemedy Defendants ("IR"))

United States District Court
Northern District of California

1    Controverted Facts, Dkt. No. 82), are overruled for failure to comply with the Local Rule.  *See*

2    *Hennigan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1094-95 (N.D. Cal. 2014) (striking

3    separately filed evidentiary objections for failure to comply with Local Rule 7-3(a) and (c));

4    *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011) (denying

5    parties' separately-filed motions to strike evidence on ground that they violate Local Rule 7-3(b)

6    and (c), and characterizing motions as "attempt[s] to evade the briefing page limits").

7         Plaintiff also filed a request for judicial notice ("RJN") asking the Court to take notice of

8    pleadings and motions he and Defendants already filed on the ECF docket in this action.  *See* Pl.'s

9    RJN, Dkt. No. 80-3.  The Court need not take judicial notice of these documents, as they are

10   already part of the record.  Plaintiff's request is moot.

**B.    Hines' Objections and RJN**

12        Hines also filed evidentiary objections (*see* Dkt. No. 84-2) that are outside of his Reply

13   Brief; the Court overrules them on the same grounds it overruled Plaintiff's separately-filed

14   objections.  Hines also asks the Court to take judicial notice of the Complaint Plaintiff filed in

15   Superior Court.  Hines RJN, Dkt. No. 55.  The request is moot; Plaintiff filed the Complaint with

16   his notice of removal.  *See* Compl., Dkt. No. 2, Ex. A.

**C.    InterRemedy Defendants' Objections**

18        The InterRemedy Defendants also filed objections but did so properly in their Reply briefs

19   in compliance with Local Rule 7-3(c).  *See* IR Reply at 16-17, Dkt. No. 85.  They object to

20   passages of the declarations filed by Fields, Robert Chapman, and Michael Nealy.  *Id*.[4]

21   Specifically, the InterRemedy Defendants object to (1) paragraphs 5, 6, 8, 10, 14, 15, 19, 20, and

22   21 of the Fields Declaration; (2) the entire Chapman Declaration, Dkt. No. 77-5; and (3) portions

23   of the Nealy Declaration.  IR Reply at 16-17.

24        A declaration used to oppose summary judgment "must be made on personal knowledge,

25   set out facts that would be admissible in evidence, and show that the . . . declarant is competent to

United States District Court
Northern District of California

---

[4] Plaintiff has filed declarations in opposition to the InterRemedy Defendants' Motion that are in all material respects identical to the declarations he filed in opposition to Defendant Hines' Motion.  *See* Fields Decl., Dkt. Nos. 77-1 & 82-1; Kenneally Decl., Dkt. Nos. 77-2 & 80-1; Rich Decl., Dkt. Nos. 77-4 & 80-6; and Nealy Decl., Dkt. Nos. 77-3 & 81-1.

United States District Court
Northern District of California

1    testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Civil L.R. 7-5(b) ("An affidavit or

2    declarations may contain only facts, must conform as much as possible to the requirements of Fed.

3    R. Civ. P. 56(e), and must avoid conclusions and argument.  Any statement made upon

4    information or belief must specify the basis therefor.  An affidavit or declaration not in compliance

5    with this rule may be stricken in whole or in part").  Fields is not an expert witness in this case, but

6    he makes numerous statements in his declaration that are not based on personal knowledge and for

7    which he does not lay foundation.  To the extent they pertain to material facts the Court relies on

8    in this Order, the Court will address the InterRemedy Defendants' evidentiary objections in the

9    Discussion below; they are otherwise denied as moot.

10          The Court overrules the general objections to the Chapman Declaration.  The objections

11   argue the Declaration should be stricken in its entirety because Plaintiff's counsel instructed

12   Chapman (Plaintiff's expert witness) not to answer deposition questions as a percipient witness,

13   but the InterRemedy Defendants provide no legal support for why the Court should wholesale

14   strike the declaration.  The Court overrules the objection for purposes of deciding these Motions.

15   The Court will address specific evidentiary objections to the Chapman and Nealy Declarations

16   below to the extent they pertain to material facts the Court relies upon in this Order; they are

17   otherwise denied as moot.

18   **D.    Materials Considered by the Court**

19          Plaintiff argues that "[t]his is a document rich case" and that the Motions must be denied

20   because "[d]ocumentary evidence substantiates Defendants' theft of C.C.H.I.'s book of business

21   and SalesForce cloud data."  Pl.'s Hines Opp'n at 3, Dkt. No. 77; Pl.'s IR Opp'n at 3, Dkt. No. 80.

22   But instead of citing evidence to support his contentions in his Oppositions, Plaintiff instead sets

23   forth six pages of "Basic Facts" followed by a statement that: "C.C.H.I. contends the above factual

24   summary is true.  Fields Dec. ¶ 6; *see also* Rich Dec. ¶¶ 6, 7; Nealy Dec. ¶¶ 4, 5."  Pl.'s Hines

25   Opp'n at 9; Pl.'s IR Opp'n at 9.  Similarly, deeming it "redundant and cumulative to produce

26   hundreds of pages of evidence to support C.C.H.I.'s Complaint allegation" that Defendants stole

27   data and/or C.C.H.I.'s business[,]" Plaintiff instead refers the Court to "the documentation

28   attached to Fields Declaration" and argues it "reveals a clear Modus Operandi ('MO') regarding

the Defendants' theft of business, money, and client data plus false data inputting and Defendants' attempt to cover-up their wrongful conduct." Pl.'s IR Opp'n at 14. This approach is insufficient to defeat summary judgment; Plaintiff does not "cit[e] to particular parts of materials in the record" (Fed. R. Civ. P. 56(c)(1)(A)), set forth the evidence the evidence that precludes summary judgment "with reasonable particularity" (*Keenan*, 91 F.3d at 1279), or provide "adequate references so that [the evidence] could conveniently be found" (*Carmen*, 237 F.3d 1026, at 1031). Where Defendants meet their initial burden of establishing no genuine question of fact exists, the Court only relies on competent evidence the parties have identified and addressed with reasonable particularity and adequate references in their briefs, separate statements of facts[5], and declarations.

Plaintiff also purports to include portions of the Complaint by reference in his Declaration. *See* Fields Decl. ¶ 6 ("Before the filing of this Opposition, I carefully read it as well as the 'Allegations Common to all Claims' within the Complaint. . . . All the facts as stated I deem true to the best of my knowledge and recollection."). Although a verified complaint may be used as an opposing affidavit under Rule 56, the verified complaint[6] "must be based on personal knowledge and set forth specific facts admissible in evidence." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *see also Hiramanek v. Clark*, 2016 WL 6277237, at *2 (N.D. Cal. Oct. 27, 2016) (single sentence in declaration purporting to incorporate allegations of complaint "as though within my personal knowledge and attested by me" did not transform complaint into verified

---

[5] The Court ordered the parties to file separate statements of facts and controverting statements of facts. The parties did so, albeit belatedly. Instead of responding to the facts listed by Defendants, however, Plaintiff disputed the characterization of certain facts, generally referred the Court to a half-dozen exhibits attached to Fields' Declaration, and asserted "contentions." *See* Pl.'s Hines Stmt. of Controverted Facts; Pl.'s IR Stmt. of Controverted Facts. Plaintiff failed to identify any additional facts for the Court's consideration. *See id.* (both). The Court has reviewed the parties' statements and considered any evidence specifically identified by the parties therein; the Court will not rely on any evidence that the parties only identified in their separate statements but not in their briefs.

[6] California law provides for the verification of complaints. "In all cases of a verification of a pleading, the affidavit of the party shall state that the same is true of his own knowledge, except as to the matters which are therein stated on his or her information or belief, and as to those matters that he or she believes it to be true . . . A person verifying a pleading need not swear to the truth or his or her belief in the truth of the matters stated therein but may, instead, assert the truth or his or her belief in the truth of those matters 'under penalty of perjury.'" Cal. Code Civ. Proc. § 446.

United States District Court
Northern District of California

complaint; plaintiff did not swear under penalty of perjury that contents of the complaint were true). Fields did not verify the Complaint, much of the Complaint is not based on personal knowledge, and it does not set forth specific facts admissible in evidence. *See* Compl. Moreover, Plaintiff fails to cite any specific portions of the Complaint in his Declarations or in his Oppositions. Finally, and most importantly, the paragraph of the Complaint that contains the core factual allegations against Defendants is pleaded on information and belief—it is specifically not based on personal knowledge, and it does not set forth specific facts admissible in evidence. *See id.* ¶ 21 ("On information and belief, after [Fields] disclosed to [Hines] the possible Asset Sale [to Integro], he conspired with [Canadas] and they proceeded to engage in the following conduct . . ."). Plaintiff's attempt to incorporate the Complaint by reference does not meet the most basic requirements of Rule 56, and the Court accordingly may not treat the allegations of the Complaint as evidence.

## PROCEDURAL BACKGROUND

On October 21, 2013, Plaintiff filed the Complaint in California state court. Plaintiff asserts claims against Hines, Canadas, InterRemedy and 99 Doe Defendants for Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Negligence; Intentional and Negligent Interference with Prospective Economic Advantage; Unfair Competition; Fraud and Deceit-False Promise; Conversion; Civil Conspiracy; and Demand for Accounting. *See* Compl. Plaintiff substituted Defendants McGuire and Willoughby for several Doe Defendants on particular claims. *See* Dkt. No. 2, Ex. B (substituting McGuire); *id.*, Ex. C (substituting Willoughby).

His claims are based on overlapping allegations that can be summarized into four categories: (1) Hines stole money owed to C.C.H.I.; (2) Hines and Canadas manipulated Canadas' salary while she was employed by C.C.H.I. to increase her compensation without the knowledge or approval of Plaintiff; (3) Defendants copied C.C.H.I.'s data from its Salesforce cloud[7] and

---

[7] "Cloud computing is quickly replacing the traditional model of having software applications installed on on-premise hardware, from desktop computers to rooms full of servers, depending on the size of the business. With cloud computing, businesses access applications via the internet. It's called Software As A Service (or SaaS). Businesses are freed up from having to maintain or

United States District Court
Northern District of California

deleted the data, which constituted a theft of C.C.H.I.'s book of business, caused a company interested in purchasing C.C.H.I.'s assets to lower its offering price, and prevented C.C.H.I. from competing with InterRemedy; and (4) Defendants solicited C.C.H.I. clients.  *See* Compl.; *see also* Pl.'s Hines Opp'n at 3.

Plaintiff removed the action to this Court in August 2015 after Hines declared bankruptcy. Not. of Removal, Dkt. No. 1.  He did not amend the Complaint after removal, the parties did not engage in any preliminary motion practice, and they did not attempt to narrow any of the claims at issue before these Motions.  Now, in his Opposition, Plaintiff states he elects to no longer pursue his good faith and fair dealing claim.  *See* Compl.; Pl.'s Hines Opp'n at 17.

## FACTUAL BACKGROUND

The following facts are undisputed for purposes of summary judgment, unless otherwise noted:

### A.   Fields, C.C.H.I., & RISK

Fields started C.C.H.I. in 1989 as "a wholesaler of stop-loss insurance and reinsurance. And as the company grew, additional services were added, auditing services, risk management, billing, collection, claim facilitation."  Lucier Decl., Ex. 1 (Fields Dep. Pt. 1) at 19:1-5, Dkt. No. 54-2.

In July 2003, a state court entered a $2 million judgment against Fields and C.C.H.I. in an unrelated matter.  Pl.'s Hines Controverting Stmt. I.A.2.  Around the same time, Hines and other C.C.H.I. employees Michael Nealy and John Mengarelli started RISK as a limited liability company to take over C.C.H.I.'s business in 2003, at least temporarily.  Hines Decl. ¶ 3, Dkt. No. 54-6; Fields Decl. ¶ 6.  Fields states he reached "a simple gentlemen's understanding" with Hines and Nealy that RISK "would be acting as C.C.H.I.'s exclusive agent for representing certain C.C.H.I. clients and/or clients' money" during the pendency of the state court action.  *See*

---

upgrade software and hardware.  Just log on and get to work, from anywhere and, in many cases, any device."  Salesforce.com, http://www.salesforce.com/cloudcomputing (last visited Nov. 2, 2016).

United States District Court
Northern District of California

Kenneally Decl., Ex. F (C.C.H.I. Am. Resp. to Special Interrog. No. 17 ("C.C.H.I. Resp.")).[8]

Hines denies he ever reached any type of understanding with Fields regarding his duties and

obligations with RISK.  Hines Decl. ¶ 4.  When the state court action ended in late 2006, RISK

began to transfer "most of C.C.H.I.'s clients and/or client's money began flowing back to

C.C.H.I.," and all of C.C.H.I.'s former employees who had been employed at RISK returned to the

employ of C.C.H.I.  *See* C.C.H.I. Resp.; *see also* Nealy Decl. ¶ 10.  Fields told Hines he could do

whatever he wanted with RISK now that the company had served its purpose.  C.C.H.I. Resp.

**B.     Hines and the Swiss Re Funds**

Fields hired Hines as a trainee at C.C.H.I. around 1999.  *See* Hines Decl. ¶ 2.  In May

2003, Hines and C.C.H.I. entered into a written Independent Contractor Agreement.  *Id.*; *see also*

Fields Decl., Ex. H ("Agreement").  The Agreement contained a confidentiality clause prohibiting

Hines from using information proprietary to C.C.H.I. for his own benefit.  *See* Agreement.  It also

contained a clause requiring Hines to give 30 days' written notice for his resignation.  *Id.*  The

parties have not produced any other employment agreement with Hines.  Hines understood that as

"a result of C.C.H.I. ceasing operations, the formation of Risk, and my being compensated by Risk

. . . the independent contractor agreement . . . with C.C.H.I. was terminated."  Hines Decl. ¶ 3.

C.C.H.I. Secretary and Chief Financial Officer Nealy declares C.C.H.I. paid Hines on this contract

until he resigned in 2013.  Nealy Decl. ¶ 10.

Fields declares Hines was eventually elected to C.C.H.I.'s Board of Directors and acted as

C.C.H.I.'s Chief Operating Officer.  *Id.* ¶ 17.  Hines declares that "to [his] knowledge," he "was

never formally appointed as an officer of the company by way of corporate resolution or other

corporate filings."  Hines Decl. ¶ 2.

Between 2008 and 2013, one of C.C.H.I.'s clients, Swiss Re, paid C.C.H.I. a total of

$701,379.03; Swiss Re paid these funds into an account held in the name of RISK, which Hines

controlled.  Nealy Decl. ¶ 8.  At some point, Nealy discovered Hines had "possibly

---

[8] Plaintiff argues "the gentleman's agreement constituted an 'implied-in-fact' contract that was
performed by the conduct of the parties and all the paper that was generated during the
performance" (Pl.'s Hines Stmt. of Controverted Facts at I.A.5 & I.A.6), but the parties have not
produced any written agreement governing Hines' duties and obligations with RISK.

United States District Court
Northern District of California

misappropriated" $605,030.59 of those funds.  *Id*. ¶ 5.  Nealy "confronted" Hines before Hines left C.C.H.I., and Hines returned $503,707.90 via two money wires.  *Id*.[9]  Hines sent one of the money transfers while still employed at C.C.H.I. and another after his departure.  *Id*.  Nealy calculates $101,322.69 of the Swiss Re payments are still "outstanding" at this point.  *Id*.  C.C.H.I. submitted a claim to its insurers to recover a loss of $101,322.69 it attributed to theft by Hines of payments due to C.C.H.I.  Valeriano Decl., Ex. A ("Release"), Dkt. No. 77-6.  The insurers paid that claim in November 2015.  *Id.* ("Part A totaled $101,322.69 and arose from Hines' alleged theft of payments due to the Insured . . . The Insurers agreed to indemnify the Insured for Part A of the Claim").  C.C.H.I. transferred its rights under the claim to the insurers and agreed to repay its insurers should C.C.H.I. recover damages for the covered claims.  Valeriano Decl. ¶¶ 5-6 & Release.

Hines resigned from C.C.H.I. on October 4, 2013.  Nealy Decl. ¶ 4.  Hines did not give C.C.H.I. written notice thirty days before resigning.  *Id*. ¶ 10; *see also* Fields Decl. ¶ 16.

## C.     Canadas and Salary Manipulation

On May 4, 2006, C.C.H.I. sent Canadas a letter offering her a position as "Sales Executive" with an annual base salary and 17.5% commission on all revenue generated by her sales efforts.  Canadas Decl., Ex. A ("Offer Letter"), Dkt. No. 57-2; *see also id*. ¶¶ 1, 3.  The offer provided that "[o]nce your commission equals your base salary . . . we will increase your commission to 35% on existing and new accounts, and discontinue your base salary."  Offer Letter.  Canadas renegotiated her terms of employment at some point.  *Id*. ¶ 12.  In January 2013, Nealy emailed Canadas about the terms of her employment.  *Id*., Ex. E (email).  Canadas replied: "My initial 2006 offer letter was re-negotiated w/ [Hines] & [Fields] w/in my first 1-2 yrs of employment.  I'm not sure if [Hines and Fields] drew up a new offer letter to reflect (I did not receive a copy).  The Agreement was that I continue to receive my salary and receive 35% commission on cases that I develop. . . .  Basically, the compensation that has been provided are

---

[9] The Court sustains in part the InterRemedy Defendants' objections to those portions of Paragraphs 8 and 15 of the Fields Declaration that are not based on personal knowledge and which lack foundation.  The Court accordingly strikes Fields' argumentative and conclusory characterizations that money was "stolen."

United States District Court
Northern District of California

1    the terms of the Agreement. . . ." *Id.*

2          After Canadas resigned from C.C.H.I., Plaintiff filed a claim with C.C.H.I.'s insurance

3    carriers, claiming Canadas and Hines had manipulated her salary to increase it, without Plaintiff's

4    knowledge or approval.  Plaintiff and Nealy were "deposed by C.C.H.I.'s Insurer regarding the

5    Employee Theft of [Hines] and [Canadas].  [They] provided substantiation . . . for . . . the payroll

6    manipulation . . . [Canadas] committed.  The claim was paid."  Nealy Decl. ¶ 9; *see also* Fields

7    Decl. ¶ 8[10] (same).  The Release executed by C.C.H.I.'s insurance shows it only paid a claim

8    associated with Hines' "alleged theft of payments due to the Insured"—it did not pay the claim

9    based on "an alleged conspiracy between Hines and Canadas to increase her salary beyond the

10   terms of her employment agreement with the Insured."  Release Recitals ¶¶ C, E, H.

11         Canadas declares she resigned from C.C.H.I. on Friday, October 4, 2013; Nealy declares

12   Canadas "quit" on Monday, October 7, 2013.  *Compare* Canadas Decl. ¶ 6 & Ex. B (sent

13   resignation letter on October 4, 2013), *with* Nealy Decl. ¶ 4 (Canadas' "quit date" is October 7,

14   2013).  Canadas was never an officer, director, principal, or shareholder of C.C.H.I.  Canadas

15   Decl. ¶ 7.

16   **D.**   **Defendant Joyce Sykes McGuire**

17         McGuire began working for C.C.H.I. in 2002.  McGuire Decl. ¶ 1; Dkt. No. 57-3.

18   McGuire was a registered nurse who provided risk management services to Plaintiff's clients.  *Id.*

19   ¶ 3.  She was never an officer, director, principal, or shareholder of C.C.H.I.  *Id.* ¶ 4.  She resigned

20   from C.C.H.I. on October 11, 2013.  Nealy Decl. ¶ 4.

21   **E.**   **Defendant Kim Willoughby**

22         Willoughby began working for C.C.H.I. in August 2014; she resigned on October 4, 2013.

23   Nealy Decl. ¶ 4.  After Willoughby left C.C.H.I., C.C.H.I. discovered some renewal information

24   was missing relating to her clients.  Rich Decl. ¶ 8.

25   //

26   //

27

28   ───────────────────────
     [10] The Court sustains Defendant's objection to Fields' conclusion that Hines and Canadas
     "manipulated" her salary.

United States District Court
Northern District of California

**F.      Defendant InterRemedy**

  1.  Formation and Capitalization

  In the spring of 2013, Hines became worried about his job security and understood Canadas, McGuire, and Willoughby "felt the same way."  Hines Decl. ¶ 10; *see also* Canadas Decl., Ex. B (resignation letter explaining same).  Hines and Canadas retained an attorney who "could advise us about how to start the [competing] business without adversely affecting C.C.H.I. Counsel . . . instructed us that we could advise prior customers of our new affiliation, as long as we were careful not to use any words of solicitation."  *Id.*

  Hines and Canadas filed Articles of Organization of a Limited Liability Company for InterRemedy Insurance Services, LLC on August 7, 2013.  Kenneally Decl., Ex. C (Articles of Organization).  Hines lent money to InterRemedy in September 2013 to fund its initial operations. Canadas Decl. ¶¶ 13-16.  InterRemedy repaid Hines those funds in the following months.  *Id.*

  2.  Solicitation of C.C.H.I. Employees and Clients

  Hines, Canadas, McGuire, and Willoughby left C.C.H.I. to join InterRemedy between October 4 and October 11, 2013; Sarah Mayer and Eric Sanchez, two other employees, who are not defendants in this action, also left C.C.H.I. to join InterRemedy on October 30 and November 7, 2013.  Rich Decl. ¶ 10; Nealy Decl. ¶ 4.  McGuire and Willoughby asked Canadas "if there was a job for them at InterRemedy.  [Canadas] did not solicit them to join InterRemedy."  Canadas Decl. ¶ 11.

  Canadas sent communications to potential clients providing her new business contact information.  *Id.* ¶ 10.  She attaches one of those communications as an "example of form" of her communications.  *Id.*, Ex. D.  The email is dated October 7, 2013, and states: "It was good talking with you today!  Below is my new contact information & I'll be in touch with a complete contact list and marketing material over the next week or so.  In the meantime, feel free to be in touch with me for any requests.  At your convenience, please provide an authorization email authorizing InterRemedy representatives to obtain stop loss quotes and/or pertinent information for" the client. *Id.*  Hines declares he followed his counsel's advice, notified potential clients of his new affiliation with InterRemedy, but did not use "words of solicitation."  Hines Decl. ¶ 10.

United States District Court
Northern District of California

1    Some C.C.H.I. clients left C.C.H.I. for InterRemedy and renewed their policies with

2    InterRemedy rather than with C.C.H.I.  Rich Decl. ¶ 9; Fields Decl. ¶ 11.  Fields declares Canadas

3    began signing up clients through InterRemedy two days after leaving C.C.H.I., and asserts that,

4    "[f]rom a practical standpoint, it is impossible to walk out of C.C.H.I.'s door and have a turn-key

5    operation running (with business signing contracts) two days later."  Fields Decl. ¶ 20.  Five

6    clients emailed Canadas ten days after she left C.C.H.I., and Plaintiff represents Canadas moved

7    those clients to InterRemedy.  Rich Decl. ¶ 8.

8          3.    Loss of C.C.H.I. Data

9    C.C.H.I. maintained client lists and "key client contracts with its larger clients ['SSAs']"

10   on a Salesforce cloud.  Chapman Decl. ¶ 6(d); Fields Decl. ¶ 11.  Data as to one particular client,

11   Masonry, existed as of January 1, 2013, "but it was all gone on January 1, 2014."  Fields Decl. ¶

12   11.  Before Hines left C.C.H.I., he provided Fields with a list of his business prospects listed on

13   the Salesforce cloud; after Hines left, "there were no prospects for [Hines] on the cloud."  *Id*.  The

14   list of business prospects indicates it was generated by Hines of RMRS, Inc., not C.C.H.I.; it also

15   does not indicate the document was generated from C.C.H.I.'s Salesforce cloud.  *Id*., Ex. D

16   (spreadsheet).  When Rich joined C.C.H.I. in October 2013, he "learned data was missing from

17   [Willoughby's] renewal cases."  Rich Decl. ¶ 8.

18   **G.    C.C.H.I. Post-Employee Departure**

19         1.    The Integro Transaction

20   No later than May 2013, Fields began negotiating an asset sale of C.C.H.I. to Integro

21   Insurance Brokers.  *See generally* Chapman Decl.; *see id*., Ex. B (Integro Proposal 5/14/2013).

22   On September 13, 2013, Integro withdrew its offer.  *Id*., Ex. E.  The sale fell through when Integro

23   informed Fields that certain documents were "missing from the SalesForce cloud," Fields "became

24   alarmed, and [ ] knew something was wrong."  Fields Decl. ¶ 10.  He "pass[ed] on the Integro

25   deal; [he] needed to investigate."  *Id*.  Robert Chapman, Fields' expert witness, declares Integro

26   revised its offering price downwards after it was "unable to verify the revenues in their review of

27   the financial records of C.C.H.I. and were unable to locate key client contracts . . . inside

28   C.C.H.I.'s SalesForce cloud."  Chapman Decl. ¶ 6(d); *see also id*. ¶ 6(e) (representing that Integro

United States District Court
Northern District of California

representatives expressed concerns to Chapman about "the fact C.C.H.I.'s revenues appeared to be dropping while the due diligence was taking place.  C.C.H.I. provided Integro with a password to its SalesForce cloud. . . . Integro's monitoring of the cloud revealed irregularities regarding C.C.H.I.'s client data that it was tracking and in particular the inability for Integro and [Fields] to locate key client SSA Agreements.").  Chapman contends Plaintiff turned the transaction down after receiving Integro's revised proposal: "Integro still wanted to deal, but [Plaintiff] refused in the best interest of C.C.H.I., his Trust, and his employees."  *Id.* ¶ 7.

### 2.    Business Continuity

C.C.H.I. experienced difficulties after the departure of its employees, including: (1) it "had no information on clients needing year-end attention [or the] work in progress of the departed employees" (Rich Decl. ¶ 7); (2) Fields "had no idea what clients were up for renewal or what clients to contact before December 31, 2013" (Fields Decl. ¶ 19); and (3) "Given the time of the year, C.C.H.I. also did not have trained employees to reconstruct the client data that was missing. . . . [O]ver 80% of the employee were gone. . . it takes numerous employees to operate and administer C.C.H.I.'s business" (*id.*).

## DISCUSSION - DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the ground that Plaintiff cannot produce admissible evidence to support the facts necessary to support his claims.  *See* Hines Mot.; IR Mot. The Court addresses each of Plaintiff's claims below.

### A.    Business Interference Claims (Hines, Canadas, InterRemedy)

Plaintiff groups his common law claims for interference with prospective economic advantage (negligent and intentional) with his statutory claim for unfair business competition under California's Unfair Competition Law ("UCL"), and identifies the same evidence to support these claims.  *See* Pl.'s Hines Opp'n at 17-23; Pl.'s IR Opp'n at 12-20.

### 1.    Legal Standards

To state a claim for intentional interference with prospective economic advantage, Plaintiff must show: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the

United States District Court
Northern District of California

14

relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Youst v. Longo*, 43 Cal. 3d 64, 71 n.6 (1987) (citation omitted).  To state a claim for negligent interference with economic advantage, Plaintiff must show: "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 786 (1997).  As a matter of law, a threshold causation requirement exists for maintaining a cause of action for either tort, namely, proof that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference.  *Youst*, 43 Cal. 3d at 71.

California's UCL, Cal. Bus. & Profs. Code § 17200, "prohibits any unlawful, unfair or fraudulent business act or practice. . . .  Its coverage has been described as 'sweeping,' and its standard for wrongful business conduct is 'intentionally broad.' . . . Each of the three 'prongs' of the UCL provides a separate and distinct theory of liability and an independent basis for relief." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1117 (N.D. Cal. 2016) (citations and internal quotation marks omitted).  A business practice is unlawful if it is forbidden by law; unfair if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous, and the injury it causes to customers outweighs the benefits of the practice; and fraudulent if members of the public are likely to be deceived by the practice.  *Id*. at 1118.

### 2.   Analysis

Defendants show there is no plausible evidence to support Plaintiff's claims that they interfered with C.C.H.I.'s prospective economic advantage or competed with their employer

United States District Court
Northern District of California

United States District Court
Northern District of California

unfairly.  *See* Hines Mot. at 7-14, 18-19; IR Mot. at 8-15.  Plaintiff relies on five categories of evidence that he argues demonstrate that Canadas, Hines, and InterRemedy engaged in conduct the goal of which was to interfere "with C.C.H.I.'s 'book of business' and diverting it to their own by improper methods."  Pl.'s Hines Opp'n at 17-23; Pl.'s IR Opp'n at 12-20; Fields Decl. ¶¶ 11-15, 20-21, Exs. B-G, I-J; Rich Decl. ¶¶ 7-10; Hines Decl. ¶ 10; Keneally Decl. ¶ 5.  The Court addresses each category below.

### i.      Timing and Number of Departures

Defendants formed InterRemedy in August 2013, but waited to quit until the last quarter of the year (traditionally an extremely busy time for C.C.H.I.), and then six C.C.H.I. employees resigned within a month.  There is evidence in the record that, at the height of C.C.H.I.'s busy season, six of C.C.H.I.'s employees left within a month of each other to join InterRemedy.  The mass departures constituted 80% of C.C.H.I.'s workforce, and left C.C.H.I. in a position where it could not determine what clients were up for renewal, and could not compete with InterRemedy for those clients.  A reasonable jury could find this constitutes circumstantial evidence that Hines, Canadas, and InterRemedy coordinated the timing of the employees' departures to, and did, interfere with C.C.H.I.'s business.

### ii.      Consulting an Attorney

Plaintiff argues the fact that Defendants sought legal advice from an attorney regarding the formation of InterRemedy "due to their consciousness of guilt . . . they knew their conspiracy to steal C.C.H.I.'s business was wrong."  Pl.'s IR Opp'n at 21.  It is undisputed Defendants consulted an attorney when setting up their competing enterprise, but Plaintiff offers no foundation for his argument that Defendants sought legal advice because they were engaged in a conspiracy to steal his business, or because they were "guilty" of any wrongdoing.  Plaintiff's conclusory statement does not constitute evidence that Defendants intended to, or did, compete unfairly with C.C.H.I.

### iii.      Capitalization of InterRemedy

Plaintiff contends InterRemedy was capitalized with money stolen from RISK and that documents reveal embezzlement and a cover up by Defendants.  Specifically, Plaintiff argues Hines used RISK to divert C.C.H.I. funds to InterRemedy.  The basis for this argument is his

United States District Court
Northern District of California

"belief" that worksheets created by Nealy show that Hines and his wife, through another company, invested money in InterRemedy, and his "contention" that the "money came from stolen RISK money."  Fields Decl. ¶ 15.

The Court sustains in part the InterRemedy Defendants' objections to Paragraph 15 of Plaintiff's Declaration.  The Court strikes the following: (1) 15:1, as this statement is based on Fields "belief" rather than his personal knowledge; (2) 15:11-12, as Plaintiff's "contention" is not based on his personal knowledge, and Plaintiff lays no foundation for belief that Hines and his wife invested $150,000 that was stolen from RISK to fund InterRemedy; (3) 15:15-17, as Plaintiff has no personal knowledge and lays no foundation for his interpretation of documents; and (4) Exhibit G to the Fields Declaration, as Plaintiff has not demonstrated how he has any personal knowledge about worksheets created by Nealy based on RISK bank account information, or about contents of worksheets.  In addition, Paragraph 15 is based on hearsay to the extent Fields represents he learned of the funds allegedly used to capitalize InterRemedy by reviewing spreadsheets Nealy created based on his review of InterRemedy's and RISK's bank accounts.

The Court also strikes the following portions of the Fields Declaration that pertain to a "cover up plan with Symetra" (a former C.C.H.I. client) and "embezzling": (1) ¶ 14:3-6 which provides only conclusions and arguments that a "cover-up plan" existed, that Defendants "embezzled money" that InterRemedy received C.C.H.I. bonus money, and that C.C.H.I. funded InterRemedy's start up; and (2) Exhibit F in its entirety, as Plaintiff lacks personal knowledge of the document and lays no foundation for the "highlights" he purports to provide regarding the meaning of the third party documents.

Plaintiff identified no competent evidence that InterRemedy was capitalized with money stolen from RISK and/or C.C.H.I.

### iv.    Data Theft

Plaintiff argues Defendants stole data from the SalesForce cloud, which prevented C.C.H.I. from knowing what clients to contact for renewals.  Specifically, he argues Hines, Canadas, and McGuire had passwords that granted them access to C.C.H.I.'s Salesforce cloud; that they copied C.C.H.I.'s data from the Salesforce to InterRemedy's Salesforce cloud; or that they deleted or

1    altered data from C.C.H.I.'s Salesforce cloud.  *See* Pl.'s Hines Opp'n at 8 (citing Fields Decl. ¶¶

2    10-14, 19, 21).  These arguments are not supported by Plaintiff's Declaration.

3         The Court has carefully reviewed the paragraphs of the Fields Declaration Plaintiff cites in

4    support of this argument, but finds they do not show these Defendants had access to C.C.H.I.'s

5    Salesforce cloud, that they deleted or altered data from the cloud, or that they copied C.C.H.I. data

6    to InterRemedy's cloud.  Fields declares Hines provided him "with his business prospects listed

7    from the Salesforce cloud" (Fields Decl. ¶ 12), but does not state Hines accessed the Salesforce

8    cloud to do so.  The document Fields attaches does not indicate it was generated from the

9    Salesforce cloud; it is a spreadsheet titled "All Prospects by Account Manager" that is generated

10   by Hines of RMRS—not C.C.H.I.  *See id.*, Ex. D.  Plaintiff has offered evidence that data

11   pertaining to Masonry, one of the clients that eventually left C.C.H.I. for InterRemedy,

12   disappeared from the Salesforce cloud at some point between January 2013 and January 2014.  *See*

13   Fields Decl. ¶ 11 & Ex. C.  Plaintiff, however, offers no evidence—direct or circumstantial—that

14   Hines, Canadas, or McGuire deleted information or copied it to InterRemedy's cloud.  The Court

15   accordingly finds Plaintiff offers no competent evidence Defendants had access to its Salesforce

16   database, deleted information from the database, or copied information from the database.

17        To further support his argument Defendants "stole data," Plaintiff argues Willoughby "was

18   not placing client data on the Salesforce cloud."  Pl.'s Hines Opp'n at 14 (citing Rich Decl. ¶ 8).

19   Rich declares he "learned data was missing from [Willoughby's] renewal cases."  Rich Decl. ¶ 8.

20   In support, Rich attaches an email from another C.C.H.I. employee Eric Sanchez, which states:

21   "[W]hile putting together a status report for [Fields], I also noticed that there is data missing from

22   a few of [Willoughby's] renewal cases.  I actually have had this matter come up before when I

23   covered for [her] while she was out on vacation – there were certainly times when pertinent data

24   was not saved to Salesforce/NetDocs.  I think Kim worked mainly off of an external hard drive

25   where the old C.C.H.I. database was housed.  It's likely that she inadvertently failed to transfer the

26   data before her departure."  *Id.*, Ex. A.  The evidence upon which Plaintiff relies accordingly does

27   not support the contention that Willoughby deleted information from the Salesforce database or

28   stole data—it suggests Willoughby worked on her local hard drive and routinely did not save the

information on the cloud.  *See also* Lucier Decl., Ex. 2 (Fields Dep.) at 278:4-279:18 (recalling email where Sanchez complained that Willoughby was "biggest offender" who worked on her C: drive and "frequently didn't upload material to the cloud" at the end of the day), 282:12-17 (concerned Willoughby's information never was uploaded to cloud).

Plaintiff identified no competent evidence Defendants stole C.C.H.I. data or deleted it from the Salesforce cloud.

<div align="center">

*v.*    *Soliciting C.C.H.I. Clients While Employed by C.C.H.I.*

</div>

Plaintiff surmises that because policy renewals take a long time to complete, Defendants must have moved C.C.H.I.'s business to InterRemedy while still being employed by C.C.H.I., and he argues documents show Defendants solicited C.C.H.I. clients while still employed there. Plaintiff recognizes Defendants were allowed to make preparations to compete while still employed by C.C.H.I., but contends they went beyond what was allowed when they solicited C.C.H.I. clients.  *See* Pl.'s Hines Opp'n at 14-16; Pl.'s IR Opp'n at 12-20.  As Plaintiff acknowledged, "California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning . . . , [but] California law does not authorize an employee to transfer his loyalty to a competitor.  During the term of employment, an employer is entitled to its employees' 'undivided loyalty.'"  *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (quotations omitted); *see also Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 413-14 (2007) (recognizing *Fowler* permits employees to make preparations to compete, but finding employees "would still breach a duty of loyalty by diverting plaintiffs' customers to [the new entity] while ostensibly remaining plaintiffs' employees or agents").  While employed, an employee may not take any action that is "inimical to the best interest of the employer."  *Huong Que*, 150 Cal. App. 4th at 414.

Plaintiff contends he has identified evidence that, while they were still employed at C.C.H.I., Defendants did more than simply prepare to compete, and that in fact they stole four C.C.H.I. clients: Propel, HCC, Voya, and Pajaro.

*Propel.*  In his declaration, Plaintiff explains that renewing stop loss contracts takes a significant amount of time and effort and that "from a practical standpoint, it is impossible to walk

<div align="center">

19

</div>

out of C.C.H.I.'s door and have a turn-key operation running (with business signing contracts) two days later." Fields Decl. ¶ 20. But Plaintiff offers no evidence InterRemedy was signing contracts "two days later." Defendants left C.C.H.I. between October 4 and October 11, 2013. While it is undisputed that C.C.H.I. clients renewed contracts with InterRemedy, the evidence shows this occurred weeks after Canadas and Hines left C.C.H.I. Plaintiff provides an email from Patti Warren of Propel Insurance Service, a broker that had used C.C.H.I. to issue policies for a number of clients. *See* Rich Decl. ¶ 9 & Ex. B. Warren emailed Canadas on October 17, 2013, at least ten days after Canadas resigned from C.C.H.I., asking Canadas to "accept this email as authorization to assume the renewal representation for Propel's stop loss policies" for five clients; the subject line reads "1-1-14 Stop Loss Renewals." *Id.*, Ex. B. Rich declares the five clients listed in the email did not renew with C.C.H.I. but instead renewed with InterRemedy. *Id.* ¶ 9. Rich represents Sanchez provided this email to him. *Id.* It is unclear whether Warren sent the email to Canadas at C.C.H.I. or InterRemedy, as Canadas' email address is not identified in the document. It also is unclear how Sanchez received the email. To the extent the email constitutes evidence of anything, it does not show Canadas had been working on renewals for these clients before her departure, solicited these clients away from C.C.H.I., or breached her duties to C.C.H.I. Plaintiff offers no evidence regarding what "assuming the renewal representation" means, and the Court cannot find from the document itself that InterRemedy signed a contract with Propel days after opening for business. In fact, Plaintiff provides a signed contract between InterRemedy and one of the Propel clients (Lile), showing the contract was prepared on November 21, 2013, and signed by the client on November 22, 2013—at least six weeks after Defendants left C.C.H.I. *See* Fields Decl., Ex. B (Business Associate Contract between Lile and InterRemedy).

*HCC*. Fields argues Sanchez "struck a deal with HCC Life Insurance Company for InterRemedy. He then had HCC correct the Proposal to read C.C.H.I. [Sanchez], however, failed to remove this from the Salesforce cloud (where it was found). Regardless, HCC is believed to have signed with InterRemedy, for C.C.H.I. no longer has it as a client." Fields Decl. ¶ 13 (citing Ex. E). Exhibit E is an email from Luana Davis at HCC to Sanchez, dated October 30, 2013, which states "Here is our proposal based on the information provided through 8/31/13. We can

finalize and lock in without the need for additional information upon notification.  I will send the notice I received from Propel separately." *Id.*, Ex. E.  The cover sheet for the attachment reads "Presented by InterRemedy Insurance Services, LLC." *Id.*  In a second email on the same day, Davis writes "Here is the correction;" the cover sheet for the attachment reads "Presented by C.C.H.I. Cost Contained Health Innovations, Inc." *Id.*  Plaintiff has not shown he has personal knowledge of the document.  He also lays no foundation for his statements that Sanchez "struck a deal on behalf of InterRemedy"; "had HCC correct the proposal to read C.C.H.I."; or that the client is now a client of InterRemedy's.  Plaintiff offers no competent evidence Sanchez "struck a deal" on behalf of InterRemedy with respect to HCC.

   *Voya/ING Reliastar*.  Plaintiff argues that documents produced by former C.C.H.I. client Voya show Canadas and Willoughby were discussing "Stop Loss Placements days after quitting C.C.H.I.'s employ.  There are even Voya emails struggling with how to handle renewing groups with InterRemedy and not C.C.H.I.  The documentation speaks for itself; solicitation by the Defendants had been taking place while the Defendants were still employed with C.C.H.I." Pl.'s Hines Opp'n at 22; Pl.'s IR Opp'n at 16.  Plaintiff cites Paragraph 20 of his Declaration and Exhibit I as evidence supporting his argument.  *See id.* (both).  The Court sustains in part the InterRemedy Defendants' objections to certain portions of Plaintiff's Declaration.  The Court strikes ¶ 20 (p.7:2-3[11] ("This material . . . 'Stop Loss Placements'")), as Plaintiff has no personal knowledge of these facts, lays no foundation for his interpretation, and furthermore, this constitutes argument and is conclusory.  The Court also strikes ¶ 21:12-20 (addressing Pajaro and Voya documents), as Plaintiff has no personal knowledge of these facts and lays no foundation for his interpretation of the third party documents; and ¶ 21 (p.8:7-10 ("Of critical interest . . . to steal")), as Plaintiff has no personal knowledge of these facts, lays no foundation for his interpretation, this constitutes argument and is conclusory.  Finally, the Court strikes Exhibit I to Plaintiff's Declaration consists of documents produced by Defendants and third parties, of which Plaintiff has no personal knowledge, and for which he lays no foundation.  Plaintiff thus has

---

[11] Paragraphs 20 and 21 of the Fields Declaration cover multiple pages.  Where necessary, the Court clarifies the page of the Declaration on which the stricken material appears.

United States District Court
Northern District of California

identified no competent evidence regarding the Voya documents and what they purportedly show.

*Pajaro Valley Unified School District*.  Plaintiff further argues documents produced about Pajaro Unified School District provide "evidence of theft, solicitation, cover-up, and false data inputting to Salesforce cloud."  Pl.'s Hines Opp'n at 22; Pl.'s IR Opp'n at 16-17.  Plaintiff cites Paragraphs 20 and 21 of his Declaration and Exhibits I and J as evidence supporting his argument. *See id*. (both).  The Court has stricken portions of both paragraphs, as well as Exhibit I.  In the remaining portions of Paragraph 21 of his declaration, Plaintiff explains that Pajaro was a former C.C.H.I. client, information on C.C.H.I.'s Salesforce cloud shows an effective date for that policy of July 1, 2013 while Defendants were still employed by C.C.H.I.  Fields Decl. ¶ 21.[12]  Plaintiff represents Exhibit J is a print out from C.C.H.I.'s Salesforce cloud showing documents associated with Pajaro.  The screenshots show the status of Pajaro is "inactive," and that Sanchez wrote at some point "[Hines] Said Do Not Complete this Form" next to a document entitled "PVUS comp_disclosure."  *Id*., Ex. J.  Fields lays no foundation for his interpretation of this Exhibit, for the meaning or effect of Sanchez's note about Hines' instruction, or for his conclusion that this document "is the evidence of a cover up and false entries being entered on the SalesForce cloud." Fields Decl. ¶ 21.

In conclusion, the Court finds that none of the evidence Plaintiff identifies creates a genuine dispute that Defendants stole any C.C.H.I. clients while employed by C.C.H.I.[13]

---

[12] The Court already struck Exhibit I in its entirety, but highlights that Plaintiff lacks personal knowledge of the Pajaro policy he describes in his Declaration, of which he only attaches the first page, and for which he does not include the signature date.  *See id*., Ex. I at p.00081 (ING Commission Agreement for Writing Agents and Brokers).  Furthermore, Plaintiff lays no foundation for his interpretation that the "effective date of the policy" represents the date the policy was signed by InterRemedy and Pajaro.

[13] While Plaintiff has identified no evidence that Defendants competed unfairly while soliciting clients while they were still employed by C.C.H.I., the Court addresses a redacted email provided by Canadas to illustrate the type of emails she sent to potential client announcing her new business affiliation.  *See* Canadas Decl., Ex. D (Canadas email to unidentified person).  In this exemplar email, Canadas asks the unidentified client to "please provide an authorization email authorizing InterRemedy representatives to obtain stop loss quotes and/or pertinent information for" the client. *Id*.  In so doing, Canadas does more than simply inform customers of her change of employment; she in fact asks the unidentified client for permission to proceed with procuring its business.  This type of email, if sent to an existing C.C.H.I. client while she was still employed by C.C.H.I., arguably would constitute evidence of improper solicitation.  *See Am. Credit Indemn. Co. v. Sacks*, 213 Cal. App. 3d 622, 636-37 (1989) (individuals may announce new affiliations, but

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

vi.     *Solicitation after Departure from C.C.H.I.*

To the extent Plaintiff argues Defendants' conduct after resigning from C.C.H.I.

constitutes unfair or unlawful conduct, the Court grants Defendants summary judgment.  Former

employees are not necessarily barred from "soliciting" clients of their former employers.  On the

contrary, "a former employee may use general knowledge, skill, and experience acquired in his or

her former employment in competition with a former employer, [but] the former employee may

not use confidential information or trade secrets in doing so."  *Morlife, Inc. v. Perry*, 56 Cal. App.

4th 1514, 1519-20 (1997).  California courts "'have repeatedly held a former employee may be

barred from soliciting existing customers to redirect their business away from the former employer

and to the employee's new business *if the employee is utilizing trade secret information to solicit*

*those customers*."  *Richmond Techs., Inc. v. Aumtech Bus. Sols*., 2011 WL 2607158, at *18 (N.D.

Cal. July 1, 2011) (emphasis added) (quoting *Retirement Grp. v. Galante*, 176 Cal. App. 4th 1226,

1237 (2009)).  "[I]t is not the *solicitation* of the former employer's customers, but is instead the

*misuse of trade secret information*, that may be enjoined."  *Galante*, 176 Cal. App. 4th at 1237

(citation omitted; emphasis in original); *see also Allied N. Am. Ins. Brokerage Corp. of Cal. v.*

*Woodruff-Sawyer*, 2005 WL 6583937, at *11 (N.D. Cal. Feb. 22, 2005) ("[A] former employee's

use of confidential information obtained from his former employer to compete with his old

employer and to solicit business of his former employer's customers, is regarded as unfair

competition." (quoting *Podolsky v. First Healthcare Corp*., 50 Cal. App. 4th 594, 606 (1982))).

And to the extent Plaintiff's contention that Defendants stole C.C.H.I.'s "book of business"

is an attempt to argue Defendants stole C.C.H.I.'s customer lists, Plaintiff has not argued, much

less identified any evidence, that the client list qualifies as a trade secret.  "[C]ourts are reluctant to

---

announcement becomes solicitation when it also discusses new company's services and invites
inquiries).  But ultimately there is no evidence that Canadas actually sent this type of email to a
C.C.H.I. client while she was employed by C.C.H.I.  The email is dated October 7, 2013 at 9:30
p.m.  Canadas declares her last day at C.C.H.I. was October 4, 2013, but Plaintiff contends her last
day was October 7, 2013.  Even assuming Plaintiff is correct, this email was sent at 9:30 p.m.,
well after the conclusion of regular business hours, and it does not indicate when the phone call it
references took place.  Plaintiff does not address this email in his Opposition nor does he argue it
constitutes evidence of unfair competition.  Accordingly, the Court finds the email does not create
a genuine dispute that Canadas solicited C.C.H.I. clients while still employed by C.C.H.I.

1   protect customer lists to the extent they embody information [that is]'readily ascertainable'

2   through public sources, such as business directories[, but] where the employer has expended time

3   and effort identifying customers with particular needs or characteristics, courts will prohibit

4   former employees from using this information to capture a share of the market.  Such lists are to

5   be distinguished from mere identities and locations of customers where anyone could easily

6   identify the entities as potential customers." *Galante*, 176 Cal. App. 4th at 1238 (quoting *Morlife*,

7   56 Cal. App. 4th at 1521-22).  Plaintiff has not provided any evidence or argument that the

8   information used to solicit any former C.C.H.I. clients constituted a trade secret.

9         4.   <u>Summary</u>

10        Plaintiff has identified circumstantial evidence based on the timing and number of

11  departures of C.C.H.I. employees who subsequently joined InterRemedy that Defendants intended

12  to compete unfairly with, and/or interfere with the prospective economic advantage of, C.C.H.I.

13  The Court accordingly denies summary judgment to Defendants to the extent Plaintiff's claim is

14  based on the timing and number of defections from C.C.H.I. to InterRemedy.  The Court grants

15  summary judgment to Defendants on these claims to the extent they are based on (1) consulting an

16  attorney in connection with the formation of InterRemedy; (2) data theft; (3) the sources of funds

17  that were used to capitalize InterRemedy; and (4) solicitation of C.C.H.I. clients before or after

18  Defendants' departure from C.C.H.I.

19  **B.    Breach of Fiduciary Duty (Hines, Canadas, McGuire)**

20        To establish a claim for breach of fiduciary duty, Plaintiff must show (1) the existence of a

21  fiduciary duty, (2) its breach, and (3) damages proximately caused by the breach.  *Hasso v. Hapke*,

22  227 Cal. App. 4th 107, 140 (2014).  "[B]efore a person can be charged with a fiduciary obligation,

23  he must either knowingly undertake to act on behalf and for the benefit of another, or must enter

24  into a relationship which imposes that undertaking as a matter of law. . . . Fiduciary duties are

25  imposed by law in certain technical, legal relationships such as those between partners or joint

26  venturers . . . trustees and beneficiaries, principals and agents, and attorneys and clients[.]"  *Id.*

27  (citations omitted).

28  //

United States District Court
Northern District of California

24

1          1.     Canadas and McGuire

2          The InterRemedy Defendants move for summary judgment on the ground that neither

3   Canadas nor McGuire owed a fiduciary duty to C.C.H.I.  IR Mot. at 2, 10.  Canadas was a Sales

4   Executive, and McGuire was a registered nurse who provided risk management services to

5   Plaintiff's clients.  Neither Canadas nor McGuire was an officer, director or shareholder of

6   C.C.H.I.  Plaintiff appears to concede the fact neither Canadas nor McGuire was an officer,

7   director, or shareholder of C.C.H.I., and argues instead that they "were high-ranking employees"

8   and therefore "stand in a fiduciary relation with C.C.H.I."; he also argues they "held positions of

9   trust" over the money and book of business he contends they stole.  Pl.'s IR Opp'n at 10-11; *see*

10  *also* Fields Decl. ¶ 22 (Canadas and McGuire "held positions of trust").

11         Corporate directors and officers typically are deemed to owe fiduciary duties to their

12  employer, and non-officers also have been found to owe fiduciary duties if they participate in

13  management.  *See generally Thomas Weisel Partners LLC v. BNP Paribas*, 2010 WL 1267744, at

14  *5-6 (N.D. Cal. Apr. 1, 2010) (citing California cases).  "[An] officer who participates in

15  management of the corporation, exercising some discretionary authority, is a fiduciary of the

16  corporation as a matter of law.  Conversely, a 'nominal' officer with no management authority is

17  not a fiduciary." *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc*., 83 Cal. App. 4th

18  409, 420-21 (2000), *disapproved of on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140

19  (2004).  Plaintiff fails to explain how these Defendants held "positions of trust" at C.C.H.I. and

20  cites no evidence to support his contention.  For example, he offers no evidence of their duties,

21  whether they participated in the management of C.C.H.I., or exercised discretionary authority at

22  C.C.H.I.  He also cites no law to support his argument they would be subject to fiduciary

23  obligations if they did hold "positions of trust."  Plaintiff simply offers no legal authority or

24  evidence that, even though they were not officers, directors, or shareholders of C.C.H.I., Canadas

25  and McGuire owed C.C.H.I. fiduciary duties.[14]

26  _____

27  [14] Instead, Plaintiff attempts to recast his breach of fiduciary duty claim as a claim for breach of
    the duty of undivided loyalty.  *See* Pl.'s IR Opp'n at 11.  But "[a]lthough they are similar, breach
28  of fiduciary duty and breach of the duty of loyalty are two distinct claims under California law."
    *E.D.C. Techs., Inc. v. Seidel*, 2016 WL 6216805, at *3-4 (N.D. Cal. Oct. 25, 2016).  Plaintiff is

United States District Court
Northern District of California

1    The Court accordingly grants summary judgment on Plaintiff's claim for breach of

2 fiduciary duty as to these two Defendants.

3        2.    Hines

4    Hines also argues Plaintiff lacks evidence showing Hines was a fiduciary of C.C.H.I. or

5 that Hines did anything to breach those duties if he did owe them.  Fields declares Hines was a

6 Director of C.C.H.I. and its Chief Operating Officer; Hines declares he does not recall ever being

7 formally elected as such.  *Compare* Fields Decl. ¶ 17, *with* Hines Decl. ¶ 2.

8    At the very least, a genuine dispute exists whether Hines was an officer of C.C.H.I. and

9 therefore owed it a fiduciary duty.  However, as to Hines' breach of this duty, while Plaintiff

10 generally argues Hines deprived C.C.H.I. of opportunities (*see* Pl.'s Hines Opp'n at 10), he does

11 not explicitly identify the wrongful conduct at issue, nor does he offer evidence of the missed

12 opportunities (*see id*. (citing Fields Decl. ¶ 17, which states without elaboration that Hines'

13 "wrongful conduct injured C.C.H.I. and deprived it of opportunities.")).  Such a conclusory

14 statement that Hines' conduct was "wrongful" is insufficient to create a genuine dispute of fact.

15 The Court also previously found Plaintiff offered no evidence Hines stole data from the Salesforce

16 cloud; solicited clients improperly during or after his employment with C.C.H.I.; breached the

17 confidentiality provision of his contract; or caused the Integro transaction to fall through.

18    Nevertheless, the Court finds a genuine question of material fact exists whether Hines

19 breached his fiduciary duty to C.C.H.I. in at least two ways: (1) the timing and number of C.C.H.I.

20 employee departures, and (2) the misappropriation of Swiss Re funds.  The Court addressed the

21 coordination of employee departures above.  With respect to the misappropriation, while much of

22 Nealy's declaration is based on hearsay and lacks foundation, his statements that Hines returned

23

24    ───────────────────────────────
    correct that even lower-level employees may owe their employer a duty of loyalty.  *See id*.

25 ("[T]his Court previously concluded that California courts generally have not distinguished
    between managerial employees and lower-level employees with respect to the duty of loyalty, 'but

26 rather use[ ] broad language suggesting that all employees owe a duty of loyalty to their
    employers'" (quoting *Otsuka v. Polo Ralph Lauren Corp*., 2007 WL 3342721, at *2 (N.D. Cal.

27 Nov. 9, 2007))); *cf. Integral Dev. Corp. v. Tolat*, WL 5781581, at *3 (N.D. Cal. Oct. 25, 2013)
    ("California law recognizes that an employer may bring an independent claim against an employee

28 *with managerial duties* for breach of the duty of loyalty." (emphasis added)).  Plaintiff has not
    pleaded a claim for breach of the duty of loyalty; he pleaded a claim for breach of fiduciary duty.

United States District Court
Northern District of California

more than $500,000 after Nealy confronted him about the missing funds is competent evidence. *See* Nealy Decl. ¶¶ 5, 8.  This, combined with the fact C.C.H.I.'s insurer reimbursed it for the loss in the amount of $101,322.69 (*see* Release), constitutes circumstantial evidence that Hines improperly diverted funds owed to C.C.H.I.  The Court accordingly denies Hines summary judgment on the breach of fiduciary duty claim to the extent it is based on the nature and timing of employee resignations and on the misappropriation of Swiss Re funds, but grants Hines' Motion in all other respects as to this claim.

**C.      Negligence (Hines, Canadas, McGuire)**

"The elements of negligence are duty, breach, causation, and damages."  *Green v. ADT, LLC*, 2016 WL 5339800, at *2 (N.D. Cal. Sept. 23, 2016) (applying California law).

    1.      Canadas and McGuire

Plaintiff's negligence claim against Canadas and McGuire is based on the theory that they were negligent in performing their fiduciary duty or their duty of loyalty as employees.  *See* Pl.'s IR Opp'n at 11.  The Court already found Plaintiff had failed to identify any evidence that Canadas and McGuire owed C.C.H.I. any fiduciary duties, but it is undisputed under California law that Canadas and McGuire owed their employer a duty of loyalty during their term of employment.  As such, they had "a duty to refrain from competing" with the C.C.H.I. "and from taking action on behalf of or otherwise assisting" C.C.H.I.'s competitors—including InterRemedy. *Blackbird Techns., Inc. v. Joshi*, 2015 WL 5818067, at *4 (N.D. Cal. Oct. 6, 2015) (applying California law), *appeal dismissed* (Nov. 23, 2015).

Canadas and McGuire argue there is no evidence to support the elements of causation, breach, or damages conclusorily alleged in the Complaint.  *See* IR Mot. at 10-11.  Plaintiff contends he has sufficient evidence to establish Canadas and McGuire were negligent in performing their duty of loyalty.  *See* Pl.'s IR Opp'n at 11 (citing Fields Decl. ¶ 19, which states "[t]he departure of the Defendants and their conduct (before and after leaving) placed C.C.H.I. in a position where it could not compete with InterRemedy (even if it wanted to). . . .").  The Court sustains the InterRemedy Defendants' objections to Paragraph 19 in part, specifically to ¶ 19:10-12 ("Consequently, it was by design that the crux of C.C.H.I.'s staff was involved and conspired

1   to move C.C.H.I.'s business to InterRemedy") on the ground it contains argument, is conclusory,

2   is not based on personal knowledge, and lays no foundation for Fields' statement.  Plaintiff fails to

3   explain what conduct he is referencing, and his conclusory statement regarding the conduct is

4   insufficient to create a genuine dispute of fact.  Nevertheless, the Court already found the fact six

5   employees resigned C.C.H.I. to join C.C.H.I.'s new competitor InterRemedy within the same

6   month constituted circumstantial evidence of unfair competition.   The Court accordingly denies

7   the InterRemedy Defendants' Motion to the extent it is based on the timing and number of

8   employee departures, but grants it to the extent it is based on any other ground.

9      2.   <u>Hines</u>

10      Plaintiff fails to identify any evidence in support of his negligence claim against Hines,

11   arguing only that this cause of action "is directly related to [Hines'] fiduciary duty to C.C.H.I.  He

12   was negligent in performing those duties under the Contract and as an Officer/Director of

13   C.C.H.I."  Pl.'s Hines Opp'n at 17.

14      The Court already addressed Plaintiff's contract claim against Hines and concluded no

15   reasonable jury could find Hines breached the confidentiality clause of that contract, or that Hines'

16   breach of the notification provision caused C.C.H.I. any damages.  The Court also already found

17   that Plaintiff established a genuine issue of fact existed whether Hines improperly appropriated the

18   Swiss Re funds.  This is also sufficient to establish a breach for purposes of Plaintiff's negligence

19   claim.  The Court accordingly denies Hines' Motion for Summary judgment to the extent it is

20   based on the misappropriation of Swiss Re funds, or on the timing and nature of the employee

21   resignations, and otherwise grants the Motion for Summary Judgment.

22   **D.   Conversion (Hines, Canadas, InterRemedy)**

23      "The elements of a conversion claim are: (1) the plaintiff's ownership or right to

24   possession of the property; (2) the defendant's conversion by a wrongful act or disposition of

25   property rights; and (3) damages."  *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (quotation

26   omitted).  Plaintiff argues Hines' conduct constitutes conversion of C.C.H.I.'s book of business.

27   Pl.'s Hines Opp'n at 23; Pl.'s IR Opp'n at 20-21.  He holds the other Defendants liable based on

28   his conspiracy theory.  *See id.*

As addressed earlier, Plaintiff has failed to identify evidence creating a genuine issue of material fact that Defendants deleted or copied data from the Salesforce cloud, solicited C.C.H.I. clients while employed, or used trade secrets to do so thereafter.  The Court accordingly grants summary judgment to Defendants on the conversion claim.

**E.      Breach of Written Contract (Hines)**

To establish a breach of contract claim, Plaintiff must show "(1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages[.]"  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Hines argues Plaintiff cannot produce admissible evidence to support this claim because the 2003 agreement is void and there is no evidence that he breached the confidentiality provision of his contract.  Hines Mot. at 15-16.  Plaintiff argues he can produce evidence in support of this claim because Hines "breached the Notice of Termination provision and the Confidentiality provision" of the written May 2003 Agreement.  Pl.'s Hines Opp'n at 16.

As an initial matter, the Court finds a genuine dispute of fact exists as to the continued validity of the Agreement.  Nealy declares that Hines continued to be paid on the contract until he left C.C.H.I. in 2013.  Nealy Decl. ¶ 10.  The Court therefore finds Hines has not met his burden of showing Plaintiff cannot produce evidence in support of the first element of this claim.  The Agreement requires Hines (1) not to use "any information that is proprietary to C.C.H.I." and (2) to provide 30-days' written notice of termination.  *See* Agreement.  The agreement further declares "there are no other promises or conditions in any other agreement whether oral or written."[15]  *Id.* The Court next evaluates whether there is evidence of Hines' breach of either of these provisions, or resulting damages.

//

---

[15] Plaintiff offered evidence he and Hines entered into a "gentlemen's agreement" regarding Hines' role with RISK; Hines denies such an agreement existed.  Plaintiff does not argue the gentlemen's agreement is a basis for his breach of contract claim, but instead focuses exclusively on the May 2003 written agreement.  Furthermore, it is undisputed the gentlemen's agreement is not written, and the Complaint specifically asserts the breach of contract claim is for breach of a written contract, referencing the May 2003 written agreement with no mention of a gentlemen's agreement.  *See* Compl. ¶¶ 16, 17, 22-26.  Plaintiff's breach of contract claim accordingly is based exclusively on the 2003 Agreement.

1          1.      Confidentiality Provision

2          Instead of citing evidence establishing a breach of the Agreement, Plaintiff "contends the

3     Complaint satisfied the elements and the facts addressed herein establish [Hines'] breach of

4     Contract." Pl.'s Hines Opp'n at 17.  He provides no evidence or even argument to support his

5     claim.  It is elementary that Plaintiff cannot rest on the allegations of the Complaint on summary

6     judgment and must "go beyond the pleadings." *Celotex Corp.*, 477 U.S. at 324-26.  Plaintiff failed

7     to oppose the Motion or identify any evidence establishing his ability to prove the elements of his

8     claim, and on this basis alone, the Court could grant summary judgment to Hines.

9          Moreover, to the extent Plaintiff argues Hines violated the confidentiality provisions of his

10    contract by stealing data from C.C.H.I.'s Salesforce cloud and using that data to steal C.C.H.I.'s

11    clients for InterRemedy (*see* Pl.'s Hines Opp'n at 14-16 ("C.C.H.I. has Sufficient Evidence to

12    Establish that Defendants Stole Data and/or Business")), the Court already found Plaintiff fails to

13    produce any admissible evidence supporting this contention.  As a result, the Court finds Plaintiff

14    has offered no evidence that Hines breached the confidentiality provision of the Agreement.

15         2.      Termination Provision

16         The Court observes the Complaint makes no mention of the 30-day notice provision when

17    discussing the 2003 Agreement (*see* Compl. ¶ 16), which may explain why Hines did not

18    specifically address the issue in his Motion.  With respect to Hines' breach of the termination

19    provision, it is undisputed Hines did not provide C.C.H.I. with 30-days' written notice before

20    leaving its employ.  Instead of explaining how that new theory of breach caused any damage,

21    Plaintiff contends the "Complaint satisfied the elements and the facts addressed herein establish

22    [Hines'] breach of Contract." Pl.'s Hines Opp'n at 17.  But the Complaint does not address the

23    30-day notice provision, and Plaintiff has identified no evidence that Hines' breach of the

24    termination notice provision caused any damages.  Plaintiff identified evidence that the mass

25    departure of employees between in late 2013 caused C.C.H.I. difficulties, but there is no evidence

26    that Hines' failure to give C.C.H.I. 30-days' notice caused those difficulties, or that the difficulties

27    would have been alleviated had he given the notice requested under the contract.

28         The Court grants summary judgment to Hines on the breach of contract claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

**F.      Fraud in the Inducement (Hines)**

The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).  Fraud in the inducement is a subset of fraud.  It "occurs when the promisor knows what he is signing but his consent is induced by fraud." *Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394, 415 (1996) (citation and internal quotation marks omitted).  "A promise of future conduct is actionable as fraud only if made without a present intent to perform. . . .  A declaration of intention, although in the nature of a promise, made in good faith, without intention to deceive, and in the honest expectation that it will be fulfilled, even though it is not carried out, does not constitute a fraud." *Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996).

Plaintiff asserts a fraudulent inducement claim against Hines on the ground that before accepting the 2003 Agreement, Hines promised he would provide C.C.H.I. with Consulting Services and assist in growing C.C.H.I.'s business, which Plaintiff alleges Hines violated in 2006. Lucier Decl., Ex. 6 (Pl.'s Resps. to Form Interrogs. at 50.2 (identifying earliest breach of consulting agreement as 2006)).  Hines argues Plaintiff cannot produce evidence to support this claim because Hines worked on the contract for ten years, establishing he not only had the intent to perform on the contract when he entered into it, but fully performed on it.  Hines Mot. at 19.

Plaintiff fails to offer any evidence Hines did not intend to perform his obligations under the Consulting Agreement when he entered into it, or that he did not perform those obligations for several years thereafter.  As such, there is no genuine issue of material fact whether Hines intended not to fulfill the expectations of the Agreement when he signed it.  The Court accordingly grants summary judgment to Hines on the fraud in the inducement claim.

**G.      Civil Conspiracy (Hines, Canadas, InterRemedy, McGuire, Willoughby)**

"The elements of a civil conspiracy are: (1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from an act done in furtherance of the common design." *I-CA Enters., Inc. v. Palram Americas, Inc.*, 235 Cal. App. 4th 257, 272 n.2 (2015) (quotation omitted). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who,

1   although not actually committing a tort themselves, share with the immediate tortfeasors a

2   common plan or design in its perpetration." *Id*. at 271-72.

3          Plaintiff argues evidence of a conspiracy between these Defendants exists because "[t]o

4   accomplish the theft of C.C.H.I.'s book of business, required a joint effort."  Pl.'s Hines Opp'n at

5   24; Pl.'s IR Opp'n at 21-22.  He bases this argument on the following: (1) 80% of C.C.H.I.'s

6   employees left to join InterRemedy; (2) InterRemedy simply took C.C.H.I.'s business model and

7   hired C.C.H.I. employees; and (3) Hines and Canadas conspired to manipulate Canadas' salary.

8   *Id*. (both) (citing Fields Decl. ¶ 19 (both)).  As an initial matter, Paragraph 19 of Plaintiff's

9   Declaration makes no mention of C.C.H.I.'s business model or the alleged salary manipulation,

10  and therefore does not constitute evidence supporting Plaintiff's argument.  Second, Plaintiff has

11  identified no evidence in connection with these Motions that InterRemedy "simply took C.C.H.I.'s

12  business model."  Third, Plaintiff has identified no competent evidence that Hines and Canadas

13  conspired to manipulate Canadas' salary.  Canadas provided evidence that she renegotiated her

14  initial salary agreement, that Nealy questioned her about her compensation in January 2013, and

15  that she explained to him that she had been paid pursuant to renegotiated terms for years but did

16  not have written documentation of the new arrangement.  *See* Canadas Decl. ¶ 12 & Ex. E.  The

17  only evidence Plaintiff identifies to support this theory of manipulation is the fact C.C.H.I.

18  presented a claim to its insurers to recover money lost as a result of the manipulation, that the

19  insurer investigated the claim and deposed Plaintiff and Nealy, and that "the claim was paid."  But

20  it is evident the insurers did not base the payment on the alleged salary manipulation.  *See*

21  Valeriano Decl., Ex. B (explicitly not agreeing to pay this claim).

22         The Court accordingly denies summary judgment on the conspiracy claim to the extent it is

23  based on the timing and number of employee resignations, and grants summary judgment on this

24  claim to the extent it is based on any other ground.

25  **H.     Accounting (Hines, Canadas, InterRemedy, McGuire, Willoughby, RISK)**

26         "To state a claim for an accounting, a plaintiff must allege a relationship that requires an

27  accounting and a balance due from the defendant to the plaintiff that can only be ascertained by an

28  accounting." *Arostegui v. Bank of Am.*, 2014 WL 1230762, at *7 (N.D. Cal. Mar. 21, 2014)

United States District Court
Northern District of California

1   (citing *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009)). "The right to an accounting is

2   derivative of other claims." *Id.* (citing *Janis v. Cal. State Lottery Com.*, 68 Cal. App. 4th 824,

3   833-34 (1998)). "An accounting 'may be sought where the accounts are so complicated that an

4   ordinary legal action demanding a fixed sum is impracticable.'" *Id.* (citing *Civic W. Corp. v. Zila*

5   *Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977)). Should Plaintiff prevail on claims at trial, and should

6   the Court find that any balance due to him on those claims can only be ascertained by an

7   accounting, Plaintiff may be entitled to an accounting. Defendants' Motion for Summary

8   Judgment on the accounting claim accordingly is denied.

9                              **DISCUSSION - PLAINTIFF'S MOTIONS**

10          Plaintiff moves for judgment on the pleadings as to Defendant RISK. *See* Pl.'s Mot. at 3.

11   RISK is named in only two causes of action: Negligence and Accounting. *See id.*; *see also*

12   Compl. RISK answered the Complaint by asserting 28 affirmative defenses. *See* Kennealy Mot.

13   Decl., Ex. C, Dkt. No. 59-2. After RISK answered the Complaint, its attorneys discovered that

14   RISK was a suspended corporation. Lucier Decl. in Support of Mot. to Withdraw ¶ 7, Dkt. No.

15   29-1. Counsel for RISK accordingly withdrew from the representation. Order Granting Mot. to

16   Withdraw, Dkt. No. 30. As a suspended California corporation, RISK lacks the capacity to defend

17   itself in this action. *See Ferras v. Husqvarna Constr. Prods. N. Am., Inc*., 2016 WL 3547926, at

18   *3 (N.D. Cal. June 30, 2016) (Cal. Revenue and Tax Code § 23301 authorizes forfeiture of

19   taxpayer's corporate powers, rights, and privileges when corporation is delinquent in paying

20   taxes); Cal. Corp. Code § 2205(c) (upon suspension, "the corporate powers, rights, and privileges

21   of the corporation are suspended"); Fed. R. Civ. P. 17(b) ("capacity of a corporation to sue or be

22   sued shall be determined by the law under which it was organized").

23   **A.      Motion for Judgment on the Pleadings**

24          "After the pleadings are closed—but early enough not to delay trial—a party may move for

25   judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly

26   granted when [, accepting all factual allegations in the complaint as true,] there is no issue of

27   material fact in dispute, and the moving party is entitled to judgment as a matter of law. . . .

28   Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under

United States District Court
Northern District of California

33

1   both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle

2   the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)

3   (internal quotation marks and citations omitted).

4       The Court accordingly reviews the Complaint to evaluate whether its "factual allegations,

5   together with all reasonable inferences, state a plausible claim for relief" against RISK. *Cafasso,*

6   *U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 & n.4 (9th Cir. 2011) (noting

7   pleading standard articulated in *Iqbal*, 556 U.S. at 677 applies to Rule 12(c) motions).  Plaintiff

8   asserts very few specific allegations against RISK.  He alleges Hines conducted business through

9   RISK and is an officer, director, or member of RISK.  Compl. ¶ 5.  He further alleges, on

10  information and belief, that RISK is an active entity authorized to do business in California.  *Id.* ¶

11  6.  He alleges he authorized Hines and Nealy to form RISK in 2003 to "deal with some of

12  C.C.H.I.'s business," that in 2007 RISK converted from a limited liability company to a

13  corporation, that Hines and Nealy were officers of RISK, that RISK took some of C.C.H.I.'s

14  business, but that most of the business flowed back to C.C.H.I. after 2005.  *Id.* ¶ 17.  He further

15  contends Hines and Canadas diverted money owed C.C.H.I. to RISK.  *Id.* ¶ 21.  Plaintiff offers no

16  additional allegations regarding RISK when stating his negligence claim, but instead formulaically

17  recites the element of this claim.  *See id.* ¶¶ 37-41.

18      To state a claim for negligence, Plaintiff must plead facts showing RISK owed him a duty,

19  breached that duty, and that the breach caused Plaintiff damages.  *See Green*, 2016 WL 5339800,

20  at *2 (applying California law).  The Complaint does not plead facts that are on their face

21  sufficient to show RISK owed him a duty or breached that duty.  Plaintiff does not identify in his

22  Motion a legal basis for finding, based on the facts in the Complaint, that RISK owed him a duty

23  or breached that duty.  The Complaint therefore does not state a plausible claim for negligence.

24  Similarly, Plaintiff's claim for an accounting is derivative of his negligence claim against RISK,

25  and accordingly, the Court also finds Plaintiff does not state a plausible claim for accounting

26  against RISK.

27      Plaintiff's motion for judgment on the pleadings as to RISK is denied.

28  //

United States District Court
Northern District of California

34

United States District Court
Northern District of California

**B.      Motion for Summary Judgment**

Plaintiff's motion for summary judgment cites the Rule 56 standard but does not provide additional details or evidence regarding his theory for RISK's liability.  *See* Pl.'s Mot. at 4-6 (reciting allegations of Complaint in narrative form).  As the Court already found, the facts Plaintiff alleges in the Complaint or in his Motion, even accepted as true, do not establish RISK owed a duty to Plaintiff or breached that duty.  Plaintiff offers no argument why Hines' wrongdoings, if any, should be imputed to RISK.  Once again, Plaintiff's claim for an accounting is derivative of his negligence claim.  Accordingly, the Court denies Plaintiff's motion for summary judgment against RISK, without prejudice.

### CONCLUSION

Based on the analysis above, the Court hereby **ORDERS** as follows:

(1)      The Court finds Hines and the InterRemedy Defendants have met their burden of showing Plaintiff cannot produce admissible evidence to support the following facts:

    (a)      Defendants capitalized InterRemedy with funds diverted from RISK and/or C.C.H.I.;

    (b)      Defendants stole or deleted data from C.C.H.I.'s Salesforce cloud;

    (c)      While Defendants were employed by C.C.H.I., they solicited C.C.H.I. clients;

    (d)      After leaving C.C.H.I., they used trade secrets to compete with C.C.H.I.; and,

    (e)      Hines and Canadas "manipulated" Canadas' compensation without the approval of Fields and/or C.C.H.I.

Defendants may file appropriate motions *in limine* to cabin Plaintiff's introduction of evidence based on this ruling before trial.

(2)      The Court **DENIES** summary judgment to Defendants Hines, Canadas and InterRemedy on Plaintiff's claims for negligent interference with prospective business advantage, intentional interference with prospective business advantage, and unfair competition law to the extent the claims are based on the timing and number of departures of C.C.H.I. employees.  The

Court **GRANTS** summary judgment to Defendants Hines, Canadas and InterRemedy on Plaintiff's claims for negligent interference with prospective business advantage, intentional interference with prospective business advantage, and unfair competition law to the extent they are based on any other ground asserted in the Complaint.

(3)   The Court **GRANTS** summary judgment to Defendants Canadas and McGuire on Plaintiff's claim for breach of fiduciary duty.  The Court **DENIES** summary judgment to Defendant Hines on Plaintiff's claim for breach of fiduciary duty to the extent the claim is based on the timing and number of departures of C.C.H.I. employees and the misappropriation of Swiss Re funds.  The Court **GRANTS** summary judgment to Defendant Hines on Plaintiff's claim for breach of fiduciary duty to the extent it is based on any other ground asserted in the Complaint.

(4)   The Court **DENIES** summary judgment to Defendants Canadas and McGuire on Plaintiff's claim for negligence to the extent the claim is based on the timing and number of departures of C.C.H.I. employees.  The Court **DENIES** summary judgment to Defendant Hines on Plaintiff's claim for negligence to the extent the claim is based on the timing and number of departures of C.C.H.I. employees and the misappropriation of Swiss Re funds.  The Court **GRANTS** summary judgment to Defendants Canadas, McGuire, and Hines on Plaintiff's claim for negligence on any other ground asserted in the Complaint.

(5)   The Court **GRANTS** summary judgment to Defendants Hines, Canadas, and InterRemedy on Plaintiff's conversion claim.

(6)   The Court **GRANTS** summary judgment to Defendant Hines on Plaintiff's claim for breach of written contract.

(7)   The Court **GRANTS** summary judgment to Defendant Hines on Plaintiff's claim for fraud in the inducement.

(8)   The Court **DENIES** summary judgment to Defendants Hines, Canadas, Willoughby and InterRemedy on Plaintiff's conspiracy claim, to the extent the claim is based on the timing and number of departures of C.C.H.I. employees.  The Court **GRANTS** summary judgment to Defendants Hines, Canadas, Willoughby and InterRemedy on Plaintiff's conspiracy claim on any other ground asserted in the Complaint.

1    (9)    The Court **DENIES** summary judgment to all Defendants on the accounting claim.

2    (10)    The Court **GRANTS** summary judgment to all Defendants on Plaintiff's claim for

3 breach of the implied covenant of good faith and fair dealing.

4    (11)    The Court **DENIES** Plaintiff's Motion for Judgment on the Pleadings against

5 Defendant RISK.

6    (12)    The Court **DENIES** Plaintiff's Motion for Summary Judgment against Defendant

7 RISK.  Defendant RISK has not appeared and cannot defend itself in this action.  Accordingly,

8 RISK will not be prejudiced if the Court affords Plaintiff the opportunity to renew his motion for

9 summary judgment.  If Plaintiff renews his motion for summary judgment, he must both address

10 the deficiencies noted herein and also confirm that seeking to dispose of the action against RISK

11 by summary judgment is procedurally proper.  Plaintiff may file a renewed motion for summary

12 judgment no later than December 15, 2016.

13    (13)    The Court **ORDERS** all parties to attend a settlement conference with the

14 Honorable Laurel Beeler, to take place **no later than 100 days from the date of this Order**.

15    (14)    The parties shall meet and confer and file a joint case management conference

16 statement no later than January 12, 2017.

17    (15)    The Court **ADMONISHES** Plaintiff it will strike any further pleadings where he

18 compares this business dispute to gang rape (Pl.'s IR Opp'n at 17), or discusses slavery (Pl.'s

19 Hines Opp'n at 18; Pl.'s IR Opp'n at 13).

20    **IT IS SO ORDERED.**

21

22 Dated: November 22, 2016

23 _____

24 MARIA-ELENA JAMES
   United States Magistrate Judge

25

26

27

28

United States District Court
Northern District of California